**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| WENDY JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16CV1411 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social | ) | |
| Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Wendy Jackson, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 6 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 9, 11; see also Docket Entry 10 (Plaintiff's Memorandum); Docket Entry 12 (Defendant's Memorandum); Docket Entry 13 (Plaintiff's Reply)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I.  PROCEDURAL HISTORY

Plaintiff applied for SSI.  (Tr. 167-77.)  Upon denial of that application initially (Tr. 54-63, 94-102) and on reconsideration (Tr. 64-74, 106-15), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 116).  Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 10-53.)  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act.  (Tr. 75-85.)  The Appeals Council thereafter denied Plaintiff's request for review (Tr. 4-7, 166), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1.    [Plaintiff] has [not] engaged in substantial gainful activity since February 11, 2013, the application date.

2.    [Plaintiff] has the following severe impairments: hypertension; [deep vein thrombosis ("DVT")]; hypercholesterolemia; history of stasis ulcers to the bilateral lower extremities; and history of right foot and ankle fractures.

. . .

3.    [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

4.    . . . [Plaintiff] has the residual functional capacity to perform light work . . . with exceptions: She can occasionally climb stairs and ramps.  She cannot climb ropes, ladders, and scaffolds.  She can frequently

bend.  She can occasionally balance, crouch, and stoop.
She cannot use foot pedals with her bilateral lower
extremities.  She cannot push and/or pull with her
bilateral lower extremities.  She requires the
opportunity to alternate between sitting and standing
every two hours at the workstation.  She can stand and
walk for a total of four hours during an eight-hour
workday.  She can sit for six hours during an eight-hour
workday.

. . .

5.  [Plaintiff] has no past relevant work.

. . .

9.  Considering [Plaintiff's] age, education, work
experience, and residual functional capacity, there are
jobs that exist in significant numbers in the national
economy that [Plaintiff] can perform.

. . .

10.  [Plaintiff] has not been under a disability, as
defined in the . . . Act, since February 11, 2013, the
date the application was filed.

(Tr. 80-84 (bold font and internal parenthetical citations

omitted).)[2]

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security

Commissioner's denial of social security benefits."  <u>Hines v.

Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope

---

[2] Although the ALJ's finding number one reads, "[Plaintiff] **has** engaged in
substantial gainful activity since February 11, 2013, the application date" (Tr.
80 (emphasis added)), the explanatory paragraph beneath that finding, as well as
the fact that the ALJ proceeded to analyze steps two through five of the
sequential evaluation process, makes clear that the ALJ in fact found that
Plaintiff had **not** engaged in substantial gainful activity since February 11, 2013
(<u>see</u> Tr. 80-84).

of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).  "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as

4

adopted by the Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" <u>id.</u> (quoting 42 U.S.C. § 423(d)(1)(A)).[3] "To regularize the adjudicative process, the Social Security Administration has . . .

---

[3] The Act "comprises two disability benefits programs. The Disability Insurance Benefits Program provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." <u>Craig</u>, 76 F.3d at 589 n.1 (internal citations omitted).

detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[4] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

---

[4] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[5] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other

---

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

jobs available in the community," the claimant qualifies as
disabled. <u>Hines</u>, 453 F.3d at 567.[6]

## B.  Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's
finding of no disability on these grounds:

1) "[t]he ALJ erred by failing to evaluate whether Plaintiff's
chronic venous insufficiency met or medically equaled Listing
4.11B" (Docket Entry 10 at 4 (bold font omitted)); and

2) "[t]he ALJ erred by failing to identify conflicts between
the testimony of the VE and the [<u>Dictionary of Occupational Titles</u>
("<u>DOT</u>")] regarding the standing and walking requirements of the
jobs cited at Step 5 of the SEP" (<u>id.</u> at 8 (bold font omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's
decision.  (Docket Entry 12 at 3-18.)

## 1. Listing 4.11B

In Plaintiff's first issue on review, she faults the ALJ for
"failing to evaluate whether Plaintiff's chronic venous
insufficiency met or medically equaled Listing 4.11B." (Docket
Entry 10 at 4 (bold font omitted).)  In that regard, Plaintiff
details medical findings in the record she contends show that

---

[6]  A claimant thus can establish disability via two paths through the SEP.  The
first path requires resolution of the questions at steps one, two, and three in
the claimant's favor, whereas, on the second path, the claimant must prevail at
steps one, two, four, and five.  Some short-hand judicial characterizations of
the SEP appear to gloss over the fact that an adverse finding against a claimant
on step three does not terminate the analysis.  <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at
35 ("If the ALJ finds that a claimant has not satisfied any step of the process,
review does not proceed to the next step.").

"Listing 4.11B was clearly implicated in this case" (see id. at 5-7
(citing Tr. 37, 243, 259, 261, 262, 263, 270, 277, 279, 282, 284,
313, 319, 375, 487-89, 818, 823, 824, 892, 927, 977-79)), and
argues that "the ALJ should have discussed [Listing 4.11B] with an
application of the requisite criteria to the evidence of record"
(id. at 7 (citing Radford v. Colvin, 734 F.3d 288, 295-96 (4th Cir.
2013), Brown v. Colvin, 639 F. App'x 921, 923 (4th Cir. 2016), and
Fox v. Colvin, 632 F. App'x 750, 755 (4th Cir. 2015))). Plaintiff
has not demonstrated grounds for reversal or remand.

   "Under Step 3, the [Social Security Administration's SEP]
regulation states that a claimant will be found disabled if he or
she has an impairment that 'meets or equals one of [the] listings
in [A]ppendix 1 of [20 C.F.R. Pt. 404, Subpt. P] and meets the
duration requirement.'"  Radford, 734 F.3d at 293 (quoting 20
C.F.R. § 404.1520(a)(4)(iii)) (internal bracketed numbers omitted).
"The listings set out at 20 CFR [P]t. 404, [S]ubpt. P, App['x] 1,
are descriptions of various physical and mental illnesses and
abnormalities, most of which are categorized by the body system
they affect.  Each impairment is defined in terms of several
specific medical signs, symptoms, or laboratory test results."
Sullivan v. Zebley, 493 U.S. 521, 529-30 (1990) (internal footnote
and parentheticals omitted).  "In order to satisfy a listing and
qualify for benefits, a person must meet all of the medical
criteria in a particular listing."  Bennett, 917 F.2d at 160

(citing <u>Zebley</u>, 493 U.S. at 530, and 20 C.F.R. § 404.1526(a)); <u>see also</u> <u>Zebley</u>, 493 U.S. at 530 ("An impairment that manifests only some of th[e] criteria [in a listing], no matter how severely, does not qualify.").

An ALJ must identify the relevant listed impairments and compare them to a claimant's symptoms only where "there is <u>ample evidence</u> in the record to support a determination that [a claimant's impairment] met or equalled [sic] one of the [] impairments listed in Appendix 1 . . . ." <u>Cook v. Heckler</u>, 783 F.2d 1168, 1172 (4th Cir. 1986) (emphasis added); <u>see also</u> <u>Russell v. Chater</u>, No. 94-2371, 60 F.3d 824 (table), 1995 WL 417576, at *3 (4th Cir. July 7, 1995) (unpublished) ("<u>Cook</u> . . . does not establish an inflexible rule requiring an exhaustive point-by-point discussion [of listings] in all cases."); <u>Ollice v. Colvin</u>, No. 1:15CV927, 2016 WL 7046807, at *3 (M.D.N.C. Dec. 2, 2016) (unpublished) (Peake, M.J.) ("[A]n ALJ is not required to explicitly identify and discuss every possible listing; however, he must provide sufficient explanation and analysis to allow meaningful judicial review of his step three determination where the 'medical record includes a <u>fair amount of evidence</u>' that a claimant's impairment meets a disability listing." (emphasis added) (quoting <u>Radford</u>, 734 F.3d at 295)), <u>recommendation adopted</u>, slip op. (M.D.N.C. Jan. 10, 2017) (Osteen, Jr., C.J.).

As relevant to the instant case,[7] Listing 4.11B requires proof of "[c]hronic venous insufficiency of a lower extremity with incompetency or obstruction of the deep venous system and . . . [s]uperficial varicosities, stasis dermatitis, and <u>either recurrent ulceration or persistent ulceration that has not healed following at least 3 months of prescribed treatment</u>."  20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 4.11B (italics omitted and emphasis added). To show that her condition meets a listed impairment, Plaintiff must establish that her impairment "meet[s] *all* of the specified medical criteria" that relate to such listing.  <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990).

Here, the ALJ's step three finding consists of the following:

> At all times relevant to this decision, neither [Plaintiff] nor her representative has ever alleged that she has a physical impairment that meets or medically equals any of the Listings of Impairments.  In addition, no treating or examining physician has ever alleged that she meets or equals any of the Listings of Impairments. Further, there is no evidence in the record that shows that any of her impairments are at Listing-level severity.  Therefore, the undersigned has determined that at all times relevant to this decision, [Plaintiff] has not met or equaled any of the Medical Listings of Impairments.

(Tr. 81.)  Plaintiff points out that "[t]he ALJ does not mention [Listing 4.11B] in her decision; much less does she analyze the criteria of the listing against the positive findings in the

---

[7]  Plaintiff does not argue that her chronic venous insufficiency has caused "[e]xtensive brawny edema . . . involving at least two-thirds of the leg between the ankle and knee or the distal one-third of the lower extremity between the ankle and hip," 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 4.11A.  (<u>See</u> Docket Entry 10 at 4-8; Docket Entry 13 at 1-5.)

medical record." (Docket Entry 10 at 4-5.) According to Plaintiff, "'the medical evidence related to Plaintiff's condition is not so one-sided that one could clearly decide, without analysis, that [Listing 4.11B] is not implicated'" (Docket Entry 13 at 5 (ellipses omitted) (quoting Dial v. Colvin, No. 1:16CV70, 2016 WL 6997502, at *6 (M.D.N.C. Nov. 30, 2016) (unpublished) (Peake, M.J.), recommendation adopted, slip op. (M.D.N.C. Dec. 29, 2016) (Eagles, J.))) and that "the ALJ's failure to adequately explain his reasoning precludes this Court from undertaking a meaningful review" (Docket Entry 10 at 8 (quoting Dial, 2016 WL 6997502, at *6)).

However, Plaintiff has not established grounds for reversal or remand, because the evidence upon which she relies shows neither that "ample evidence" existed that her impairment met or equaled Listing 4.11B, Cook, 783 F.2d at 1172, nor that remand for an express discussion of Listing 4.11B by the ALJ would lead to a different outcome in her case, Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"). Significantly, Plaintiff glosses over the fact that the objective medical findings required by Listing 4.11B must have occurred after her application date of February 11, 2013, in order to qualify as disabling. See Alston v.

12

Colvin, No. 14-cv-0244(JS), 2015 WL 5178158, at *9 (E.D.N.Y. Sept. 3, 2015) (unpublished) (upholding ALJ's finding that the plaintiff did not meet a particular listing where no evidence existed the plaintiff had the requisite symptoms "during the relevant disability period" (emphasis added)). Here, Plaintiff emphasizes several occasions in 2011 and 2012, prior to the relevant period in this case, when providers diagnosed Plaintiff with stasis ulcers, stasis dermatitis, and varicose veins. (See Docket Entry 10 at 5-7 (citing, inter alia, Tr. 259 (11/21/12 office visit reflecting stasis dermatitis with a less than 1 cm in diameter small ulceration), 261 (10/22/12 office visit showing stasis dermatitis bilaterally with a small nonhealing ulcerating aspect of the left calf less than 1 cm in diameter), 263 (10/8/12 office visit noting severe skin changes compatible with stasis dermatitis in medial aspect of left ankle with a 1 cm in diameter superficial clean stasis ulcer and varicose dilatations), 284 (8/22/12 gynecological office visit assessing 1 cm ulceration on left inner ankle), 315 (11/9/11 office visit finding dime sized ulcer to left ankle), and 375 (9/11/12 office visit diagnosing left leg stasis ulcer)).)

However, after Plaintiff's February 11, 2013, application date, Plaintiff's cited evidence reflects no diagnoses of stasis dermatitis and only three sporadic instances of stasis ulcers over a nearly two year period, which qualify as neither "recurrent" nor "persistent," 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 4.11B.  (See

Docket Entry 10 at 5-7 (citing Tr. 243 (4/5/13 emergency room visit for left leg pain noting chronic superficial ulceration of left ankle), 892 (5/15/14 office visit assessing venous stasis ulcer of leg), 977-79 (1/17/15 emergency room visit reflecting cellulitic ulcer over left lateral malleolus)).)[8]  Under such circumstances, Plaintiff has shown neither that the record contains "ample evidence" that her chronic venous insufficiency met or medically equaled Listing 4.11B, Cook, 783 F.2d at 1172, nor that a remand for an express discussion of Listing 4.11B by the ALJ would lead to a different outcome in her case, see Gower v. Commissioner of Soc. Sec., Civ. No. 13-14511, 2015 WL 163830, at *29 (E.D. Mich. Jan. 13, 2015) (unpublished) (finding step three remand not justified where "[a]ny further discussion [by the ALJ at step 3] would simply expound upon the absence of evidence"); see also Fisher, 869 F.2d at 1057 (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

In sum, Plaintiff's first assignment of error fails to entitle her to relief.

---

[8] Although Plaintiff claims that a December 20, 2013, treatment note reflected a "recently healed" ulcer (Docket Entry 10 at 6 (citing Tr. 836) (emphasis added)), that note merely documents "hyperpigmentation over the medial left ankle where a healed ulcer is present," and does not provide any indication of how recently the ulcer had healed (Tr. 836 (emphasis added)).  Moreover, the listing requires "either recurrent ulceration or persistent ulceration that has not healed following at least 3 months of prescribed treatment."  20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 4.11B (emphasis added).

## 2. Conflict Between VE's Testimony and the DOT

In Plaintiff's second and final issue on review, she contends
that "[t]he ALJ erred by failing to identify conflicts between the
testimony of the VE and the [DOT] regarding the standing and
walking requirements of the jobs cited at Step 5 of the SEP."
(Docket Entry 10 at 8 (bold font omitted).) In particular,
Plaintiff asserts that "[t]he ALJ's RFC . . . includes a
restriction to only four hours of standing and walking," but "all
three jobs [cited by the VE] are at the light exertional level
. . . [which] requires six hours of standing and walking in an
eight hour workday." (Id. (emphasis added) (citing Tr. 81, DOT,
No. 209.587-034 (Marker), 1991 WL 671802; No. 209.687-026 (Mail
Clerk), 1991 WL 671813; No. 344.667-010 (Ticket Taker), 1991 WL
672863 (G.P.O. 4th ed. rev. 1991), and 20 C.F.R. § 404.1567(b)).)
According to Plaintiff, "an ALJ [must] identify and obtain a
reasonable explanation for any apparent conflicts between
occupational evidence provided by VE's [sic] and the information in
the [DOT]" (id. (citing Pearson v. Colvin, 810 F.3d 204, 210-12
(4th Cir. 2015) (emphasis added), and Social Security Ruling 00-4p,
Policy Interpretation Ruling: Titles II and XVI: Use of [VE] and
Vocational Specialist Evidence, and Other Reliable Occupational
Information in Disability Decisions, 2000 WL 1898704, at *2 (Dec.
4, 2000) ("SSR 00-4p"))), and "does not fulfill [that] duty . . .
'merely because the [VE] responds [affirmatively] when asked if

[his or] her testimony is consistent with the [DOT]'" (id. at 9 (citing Pearson, 810 F.3d at 208 (quotation marks omitted))). Plaintiff maintains that "a limitation to four hours of standing and walking in an eight hour workday is an apparent conflict with the [DOT's] description of light work" that the ALJ failed to identify or resolve. (Id. (citing Fogle v. Colvin, No. 3:16-CV-32-FDW-DSC, 2016 WL 7322789, at *3-4 (W.D.N.C. Dec. 15, 2016) (unpublished)).) Plaintiff deems that alleged error prejudicial, because, given Plaintiff's age, education, and past relevant work, "a limitation to sedentary exertion . . . would have resulted in a finding of 'disabled' under the [Medical-Vocational Guidelines]." (Id. at 10 (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 2, § 201.12).) Plaintiff's contentions fall short.

SSR 00-4p places an affirmative duty on an ALJ to elicit an explanation from the VE as to any "apparent unresolved conflict" between the VE's testimony and the DOT:

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the [DOT]. When there is an apparent unresolved conflict between VE . . . evidence and the [DOT], the [ALJ] will elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the [ALJ's] duty to fully develop the record, the [ALJ] will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4p, 2000 WL 1898704, at *2 (emphasis added). "[A]n ALJ has not fulfilled his affirmative duty merely because the [VE] responds

'yes' when asked if her testimony is consistent with the [DOT]," Pearson, 810 F.3d at 208 (internal quotation marks omitted); thus, "[t]he ALJ independently must identify . . . where the [VE's] testimony seems to, but does not necessarily, conflict with the [DOT]," id. at 209 (emphasis added); see also id. (rejecting the Commissioner's argument that an "apparent" conflict meant only an "obvious" one).

In this case, the ALJ queried the VE whether an "individual of [Plaintiff's] age, education, and work history[,] . . . [who] can perform at the light exertional level, with occasional climbing [of] stairs[] and ramps[, n]o climbing [of] ropes, ladders, or scaffolds[, f]requent bending, and occasional balancing, crouching, [and] stooping, with no kneeling and crawling, . . . no use of foot pedals with the bilateral lower extremities, and . . . no pushing and/or pulling with the bilateral lower extremities," could perform any past relevant work or any other jobs in the national economy. (Tr. 44 (emphasis added).)  In response, the VE opined that such an individual would remain capable of performing past relevant work as a Cashier, as well as the jobs of Marker, Mail Clerk, and Ticket Taker, and provided the corresponding DOT codes and national job numbers for the latter three positions.  (See id.)  The ALJ then requested the VE to "assume the facts given under hypothetical number one[ and to also] assume that the individual requires the opportunity to alternate between sitting, with [] standing and

walking a total of four hours in an eight hour work day, and . . . retain[]s the ability to sit for up to six hours in the eight hour work day," and asked the VE whether such an individual could perform any jobs. (Tr. 45 (emphasis added).) In response, the VE stated that the individual would still remain able to perform the jobs of Marker, Mail Clerk, and Ticket Taker. (Id.) The ALJ then asked: "Is your testimony consistent with the DOT," to which the VE testified: "It is, your honor, and based on experience in the field." (Id.)

The ALJ subsequently found that Plaintiff lacked any past relevant work (see Tr. 83), but adopted the VE's testimony as to Plaintiff's ability to perform the Marker, Mail Clerk, and Ticket Taker jobs:

> To determine the extent to which [the RFC's limitations] erode the unskilled light occupational base, [the ALJ] asked the [VE] whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC]. The [VE] testified that given all of these factors, the individual would be able to perform the requirements of representative occupations such as [M]arker ([DOT] #209.587-034) with 47,000 jobs in the national economy; [M]ail [C]lerk ([DOT] #209.687-026) with 10,000 jobs in the national economy; and [T]icket [T]aker ([DOT] #344.667-010) with 20,000 jobs in the national economy.
>
> Pursuant to SSR 00-4p, [the ALJ] has determined that the [VE's] testimony is consistent with the information contained in the [DOT].

(Tr. 84 (emphasis added)).

Here, Plaintiff has not shown that an "apparent unresolved conflict," SSR 00-4p, 2000 WL 1898704, at *2, exists between the

VE's testimony that an individual limited to four hours of standing and walking could perform the jobs of Marker, Mail Clerk, and Ticket Taker, and the <u>DOT</u>'s categorization of those jobs as light in exertion.  Plaintiff's argument begins with the faulty premise that "[l]ight work <u>requires</u> six hours of standing or walking in an eight hour workday."  (Docket Entry 10 at 8 (emphasis added) (citing 20 C.F.R. § 404.1567(b)).)  Although "the <u>full</u> range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday," Social Security Ruling 83-10, <u>Titles II and XVI: Determining Capability to Do Other Work – the Medical-Vocational Rules of Appendix 2</u>, 1983 WL 31251, at *6 (1983) (emphasis added), the ALJ did not find, either in the RFC or the dispositive hypothetical question to the VE, that Plaintiff remained capable of performing a <u>full</u> range of light work (<u>see</u> Tr. 44-45, 81).  Rather, the ALJ found that Plaintiff could perform a <u>reduced</u> range of light work, i.e., light jobs entailing a maximum of only <u>four</u> hours of standing and/or walking in a workday.  (<u>See id.</u>)

Consistent with the ALJ's RFC finding, the regulations make clear that the unskilled, light occupational base contains some light jobs that do <u>not</u> contain a substantial standing and/or walking requirement:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, <u>a job is in this category when it</u>

> requires a good deal of walking or standing, or when it
> involves sitting most of the time with some pushing or
> pulling of arm or leg controls. To be considered capable
> of performing a full or wide range of light work, you
> must have the ability to do substantially all of these
> activities.

20 C.F.R. § 416.967(b) (emphasis added).[9]   Indeed, the DOT's

definition of light work adds yet a third category of work that

qualifies as the light level of exertion without any requirement to

stand and/or walk at all, let alone for six hours in a workday:

> Even though the weight lifted may be only a negligible
> amount, a job/occupation is rated Light Work when it
> requires: (1) walking or standing to a significant
> degree; (2) sitting most of the time while pushing or
> pulling arm or leg controls; or (3) working at a
> production rate pace while constantly pushing or pulling
> materials even though the weight of the materials is
> negligible.

DOT, App'x C (Components of the Definition Trailer), § IV (Physical

Demands - Strength Rating), 1991 WL 688702 (emphasis added).

Thus, no apparent conflict exists between the DOT's

classification of the VE's cited jobs as light in exertion and the

VE's testimony that an individual limited to no more than four

hours of standing and/or walking could perform those jobs.  See

Gutierrez v. Commissioner Soc. Sec. Admin., No. 3:12-cv-02016-MA,

2014 WL 1225118, at *8 (D. Or. Mar. 24, 2014) (unpublished)

(finding no conflict under SSR 00-4p between DOT's definition of

---

[9] The undersigned has cited to Section 416.967(b) of the regulations which
governs SSI claims like Plaintiff's, rather than the parallel section governing
Disability Insurance Benefits claims cited by Plaintiff, Section 404.1567(b).

light work and VE's testimony that individual limited to four hours of standing and walking could perform light job of office helper).

Moreover, nothing in the DOT's description of the jobs cited by the VE (see Tr. 44-45) (and relied on by the ALJ (see Tr. 84)) indicates that those particular jobs require more than four hours of standing or walking in an eight hour workday. See DOT, No. 209.587-034 (Marker), 1991 WL 671802; No. 209.687-026 (Mail Clerk), 1991 WL 671813; No. 344.667-010 (Ticket Taker), 1991 WL 672863. In fact, as argued by the Commissioner (see Docket Entry 12 at 15-16), the DOT's descriptions for those jobs list many activities that a worker can perform while seated. See, e.g., DOT, No. 209.587-034 (Marker), 1991 WL 671802 (describing duties to include attaching price tickets to merchandise, recording articles marked and packing them in boxes, and using a ticket-printing machine); No. 209.687-026 (Mail Clerk), 1991 WL 671813 (indicating that mail clerk sorts incoming mail, opens envelopes, stamps the date and time of receipt on mail, folds letters and inserts them into envelopes, and addresses, weighs, and stamps outgoing mail); No. 344.667-010 (Ticket Taker), 1991 WL 672863 (listing tasks such as collecting admission tickets from patrons at events, issuing door checks to patrons temporarily leaving, and counting/recording the number of tickets collected). Furthermore, Plaintiff has made no attempt to show that a conflict exists between the DOT's job duty descriptions for the occupations cited by the VE and the VE's testimony that an

individual limited to no more than four hours of standing and/or walking could perform those occupations. (See Docket Entries 10, 13.) Under such circumstances, Plaintiff has failed to show that an apparent conflict exists between the VE's testimony and the DOT.

Even assuming, arguendo, that an apparent conflict existed, Plaintiff has not shown how the ALJ failed to resolve that conflict. As described above, because the ALJ found that Plaintiff could perform only a reduced range of light work (see Tr. 81), the ALJ consulted with a VE, who testified that unskilled light jobs existed in significant numbers in the national economy that accommodated the RFC's restrictions, including the limitation to no more than four hours of standing and/or walking, and that her testimony harmonized with the DOT (and that she otherwise based her testimony on her field experience) (see Tr. 44-45).[10]

_____

[10] The ALJ's methodologies also complied fully with Social Security Ruling 83-12, Titles II and XVI: Capability to Do Other Work — the Medical-Vocational Rules as a Framework for Evaluating Exertional Limitations Within a Range of Work or Between Ranges of Work, 1983 WL 31253(1983) ("SSR 83-12"):

> Where an individual's exertional RFC does not coincide with the definition of any one of the ranges of work as defined in sections 404.1567 and 416.967 of the regulations, the occupational base is affected and may or may not represent a significant number of jobs . . . . The [ALJ] will consider the extent of any erosion of the occupational base and a[ss]ess its significance. In some instances, the restriction will be so slight that it would clearly have little effect on the occupational base. In cases of considerably greater restriction(s), the occupational base will obviously be affected. In still other instances, the restrictions of the occupational base will be less obvious.
>
> Where the extent of erosion of the occupational base is not clear, the [ALJ] will need to consult a vocational resource.

SSR 83-12, 1983 WL 31253, at *2 (emphasis added).

To nevertheless find a conflict under such circumstances would impermissibly extend the holding in Pearson to merely "possible" conflicts. See Eddie v. Berryhill, No. 5:16-CV-801-D, 2017 WL 4002147, at *6 (E.D.N.C. Aug. 24, 2017) (unpublished) (rejecting the plaintiff's conflict argument because "[the c]laimant move[d] beyond what is apparent and into the realm of what is possible" and noting that "[t]he Fourth Circuit in Pearson expressly declined to expand the ALJ's duty to include inquiry as to 'all possible conflicts'" (emphasis added) (quoting Pearson, 810 F.3d at 209)), recommendation adopted, No. 5:16-CV-801-D, 2017 WL 3995813 (E.D.N.C. Sept. 11, 2017) (unpublished).

In much the same vein, the analysis in Fogle, relied on by Plaintiff (see Docket Entry 10 at 9; Docket Entry 13 at 6), glosses over the distinction between "possible" and "apparent" conflicts.[11] The Fogle court held that "[t]he descriptions of the [light] jobs identified by the [VE] *could* require standing and/or walking in excess of four hours per day, and the ALJ did not obtain an explanation for this conflict." Fogle, 2016 WL 7322789, at *4

---

[11] The undersigned briefly discussed Fogle in a previous decision. See Finnegan v. Berryhill, No. 1:16CV1012, 2017 WL 2224332, at *5 n.7 (M.D.N.C. May 19, 2017) (unpublished) (Auld, M.J.), recommendation adopted, slip op. (M.D.N.C. June 15, 2017) (Schroeder, J.). In Finnegan, the plaintiff had cited Fogle to support her argument that "the DOT's silence regarding a particular limitation automatically create[d] a conflict with the VE's citation of jobs accommodating that limitation." Id. The undersigned noted only that Fogle did not support that argument, as the court in that case stated that "the [DOT] is not silent" in finding a conflict between the DOT's definition of light work and the VE's citation of three light jobs that accommodated a restriction to no more than four hours of standing and/or walking. Id. (quoting Fogle, 2016 WL 7322790, at *4). Thus, in Finnegan, the undersigned did not reach the merits of that underlying issue. See id.

(emphasis in original).  The court's focus on whether a conflict _could_ exist between the light jobs' descriptions and a limitation to four hours of standing/walking underscores that the court found a mere "possible" conflict sufficient to reverse.  _Id._

In short, Plaintiff has not shown that the ALJ reversibly erred by failing to identify and resolve an apparent conflict between the VE's testimony and the _DOT_.

## II.  **CONCLUSION**

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 9) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 11) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

October 20, 2017